**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AMANDA DECKER,

        Plaintiff,

      v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC,

        Defendant.

No. 17 CV 4152

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

A satellite television company hired defendant Receivables Performance Management, LLC, to collect on a delinquent account belonging to plaintiff Amanda Decker. In the 150 days that followed, Receivables called Decker 297 times. They often called three times a day, mostly during the work week between 11:00 a.m. and 8:00 p.m. Whenever someone picked up (which may have occurred as few as six times), Receivables waited until the next day before resuming its calls. Receivables also says that it sent information about the underlying debt to the address Decker provided, but Decker says the address she gave was wrong and that she never received their communications. Her complaint alleges violations of the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and the Illinois Consumer Fraud and Deceptive Practices Act. Receivables moves for summary judgment on all counts.

## I.    Legal Standards

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must show that, after "construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party," *United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 668 (7th Cir. 2014), a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party is also entitled to summary judgment where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.    Facts

Decker signed up for satellite television with DishNetwork. [38] ¶ 1; [38-1] 35:3–7.[1] As part of that process, she authorized DishNetwork (and "any debt collection agency") to call her cell phone. [38] ¶ 5. Within nine months, her account was delinquent, and DishNetwork assigned it to Receivables for collection. [38] ¶ 6.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Decker's Response to Receivables's Local Rule 56.1 statement, [38], and Receivables's Response to Decker's Statement of Additional Material Facts, [41], where both the asserted fact and the opposing party's response are set forth in one document. Arguments raised in the Local Rule 56.1 statements were disregarded, as were statements that were unsupported by admissible evidence (or where the party failed to follow Local Rule 56.1's direction to cite to supporting material in the record).

2

Receivables started calling Decker the next day. [38] ¶¶ 6, 25; [38-2] at 2. Between December 2016 and May 2017, Receivables called Decker at least 297 times. [38] ¶ 25. According to the call logs, the calls all took place between 11:00 a.m. and 8:00 p.m., and all but ten of them occurred during the work week. [38-2]. If Decker picked up, Receivables did not call her back again until the next day. [38] ¶ 30. On some days, no calls were made, and on at least one other, Receivables called Decker four times. [38] ¶ 26; [38-2] at 7 (March 23, 2017). Receivables often called Decker three times on the same weekday, and on twenty-two occasions, called twice within the same hour. [38-2]. *See also* [38] ¶ 29. Receivables says that six of those calls connected and that its agents were only twice able to confirm they were speaking with Decker; Decker says their count is too low. [38] ¶¶ 33, 35.

There is disagreement about what was said during the calls, too. First, according to Receivables, Decker never said she wanted the calls to stop. [38] ¶¶ 36, 52, 53. During her deposition, Receivables played Decker recordings from six calls and, after listening to those recordings, Decker confirmed that she never heard herself ask (or tell) the person on the other end of the line to stop calling. *Id.* ¶¶ 43–48. Still, Decker says she asked Receivables to stop calling on six other occasions. *Id.* ¶ 6. [38-1] 146:1–11. Second, Receivables says they never used "false representation or deceptive means to collect or attempt to collect any debt." [38] ¶ 37. There is evidence in the record suggesting that Decker disagrees. *Id.*; [35-2] at 29.

There is also disagreement over the address Receivables used to send Decker certain information about the underlying debt. Decker testified that, during a call on

3

December 16, 2016, while she "wasn't paying attention" and not "even listening," she confirmed that her address was "6 Circle Drive, No. 6." [38-1] 124:14–16. Decker testified that the same address was reflected in the satellite television company's record of Decker's account. *See* [38-1] 43:23–44:4. Receivables says that, on December 17, it sent Decker information about her debt to "6 Circle Drive. #6, Effingham, Illinois." [38] ¶ 11. The record contains a letter, dated December 17, 2016, addressed to "Decker, Amanda, 6 Circle Dr #6, Effingham, IL," that includes the amount due ($467.66), the name of the "original creditor" ("DISH"), instructions for disputing the validity of the debt and information about how to contact Receivables and the original creditor. [35-3] at 22. *See also* [38] ¶ 14. Receivables says they sent Decker four other written notices about the debt to the same address. [38] ¶¶ 15, 17, 19, 21; [35-3] at 32–39. Decker testified that, despite what she told Receivables, her address does not have an apartment number (i.e., her address is "6 Circle Drive, Effingham, Illinois"), [38-1] 105:6–107:11, that she had lived at that address for the three years before her deposition, [38-1] 22:9–11, and that she never received any documents from Receivables. [38] ¶ 13–15; [38-1] 35:17–20; 102:23–103:1.

Decker's complaint alleges that the calls invaded her privacy, were a "nuisance" and caused "aggravation … , emotional distress, mental anguish, anxiety, [and] loss of concentration," among other harms. [1] ¶ 23. In support of these allegations, Decker testified that the calls caused her to experience "anxiety and stress," [38-1] 112:21–22, and anger, [38-1] 139:12–14, think something bad had happened to her grandmother (who was ill at the time), [38-1] 112:22–113:2, "go into

4

panic mode," [38-1] 116:17–23, and feel annoyed, abused and harassed. [38-1] 148:1–11. On one call, Decker yelled, "fucking talk if you're gonna call me 20 times a day." [41] ¶ 6.

III.    **Analysis**

A.    **Withdrawal of Counts I and III**

Trial courts have broad discretion to dismiss an action "at the plaintiff's request" and "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2); *Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980); *Mother & Father v. Cassidy*, 338 F.3d 704, 709 (7th Cir. 2003); *Chavez v. Illinois State Police,* 251 F.3d 612, 656 (7th Cir. 2001) (district court did not abuse its discretion in granting request for voluntary dismissal with prejudice where plaintiff "abandoned their arguably meritorious remaining claims" "on the eve" of a "hotly-litigated" case), so long as those terms do not result in "plain legal prejudice." *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988).

In her response to the motion for summary judgment, Decker requests dismissal of Counts I (alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, [1] at 4–6) and III (alleging violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, [1] at 8–10) of her complaint, with prejudice. [39] at 1.

Receivables says that, since it has answered the complaint and filed a motion for summary judgment, Decker "can only seek dismissal by way of a Motion." [40] at 3. But Receivables cites no support for that proposition. *Id.* The rule itself makes no mention of a motion—only that a case may be dismissed at this stage "at the plaintiff's

request." Fed. R. Civ. P. 41(a)(2). *See also Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 790 F.Supp.804, 820 (C.D. Ill. 1992), *aff'd*, 998 F.2d 391 (7th Cir. 1993) (granting request to withdraw claim that was made in a footnote in a response to a motion for summary judgment).

Receivables otherwise does not object "so long as the order is with prejudice and on the merits." [40] at 3. A dismissal with prejudice "has the same effect as an adverse judgment on the merits." *Marlow v. Winston & Strawn*, 19 F.3d 300, 305 (7th Cir. 1994); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("adjudication upon the merits" is the opposite of a "dismissal without prejudice"); *Mother*, 338 F.3d at 710 ("[w]here the dismissal is with prejudice, … , nothing in the language of Rule 41 suggests that the prevailing defendant should not enjoy the normal benefits of a final judgment in its favor," such as the awarding of costs under Federal Rule of Civil Procedure 54(d)).

In light of Decker's request, and in the absence of any indicator that the dismissal would result in plain legal prejudice, Decker's request to voluntarily dismiss Counts I and III under Federal Rule of Civil Procedure 42(a)(2), [39] at 1, is granted. Counts I and III of Decker's complaint are dismissed with prejudice. This dismissal operates as an adjudication on the merits.

## B. Standing

Receivables says Decker lacks Article III standing to bring her sole remaining claim under the Fair Debt Collection Practices Act. [35] at 8; [40] at 3–6; [1] at 6–8. Standing is a jurisdictional requirement. *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 255 (1994). It "limits the category of litigants empowered to maintain a

6

lawsuit in federal court," *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016), and is "different" from concerns about the underlying merits of the claim. *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970). Decker must (1) have "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547. Neither party disputes that— if Decker suffered an injury in fact—it was caused by defendant's phone calls and can be redressed by damages. *See* [35]; [39]; [40].

An "injury in fact" is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Although the injury must be "real" and not "abstract," *Spokeo,* 136 S. Ct. at 1548, it may be "intangible," *id.* at 1549, and "noneconomic." *Ass'n of Data Processing Serv. Organizations*, 397 U.S. at 830. Congress has the power to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan,* 504 U.S. at 578. As a result, even the "violation of a procedural right" can constitute an intangible injury in fact if the statutory violation presents an "'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017),

*cert. denied*, 138 S. Ct. 740 (2018). "[A] bare procedural violation, divorced from any concrete harm," cannot. *Spokeo*, 136 S. Ct. at 1549.

The interests underlying the Fair Debt Collection Practices Act include being free from harassment by debt collectors and receiving accurate, complete information about an alleged debt. The statute identifies truthful disclosures as one interest. *See* 15 U.S.C. § 1692e (prohibiting debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt"); 15 U.S.C. § 1692j (making it unlawful to furnish forms that create a false belief in the consumer that a person other than the creditor is attempting to collect on a debt). On the issue of harassment, some members of Congress thought "unscrupulous debt collectors" regularly inflicted substantial "suffering and anguish" on debtors. S. Rep. No. 95–382, at 1696 (1977). The Senate Committee further explained the need for the statute by citing abusive practices such as "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.*

Decker has standing to bring her claims. She has alleged a violation of § 1692d (which generally prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt") and § 1692d(5) (which specifically prohibits "[c]ausing a telephone to ring … repeatedly or continuously with intent to annoy, abuse, or harass any person at the called

number"). 15 U.S.C. § 1692d. The alleged statutory violation creates an "appreciable risk of harm" to the "underlying concrete interest[s] that Congress sought to protect by enacting the statute." *Groshek*, 865 F.3d at 887; 15 U.S.C. § 1692; S. Rep. No. 95–382, at 1696 (1977). Decker has substantiated the "risk of harm" with testimony that she in fact experienced the type of harm Congress sought to prevent. [38-1] 112:19–113:2, 116:17–23, 148:1–12, 112:19–113:2. That is enough to present a case or controversy to a federal court.

Receivables says Decker failed to present sufficient evidence in support of her emotional damages, [40] at 4–5, and notes that Decker has not "disclose[d] any actual damages" beyond "uncorroborated self-serving conclusions." [35] at 8 (adding that only "six relevant calls were connected"). Receivables is right that Decker's testimony is "self-serving," but wrong to criticize it as such. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("[a]s we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment").

Receivables is also right that, at the summary judgment stage, a plaintiff must prove emotional damages via something more than "bare allegations." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) (at the summary judgment stage, "bare allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action"). But this

quantum of proof is not about Article III standing; courts should not confuse "injury-in-fact" with "entitlement to relief." *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) ("[a]lleging injury for purposes of standing is not the same as submitting adequate evidence of injury under the statute to survive a motion for summary judgment"). "Although the two concepts unfortunately are blurred at times," they are "not the same thing." *Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th Cir. 2008). "Standing is a prerequisite to filing suit, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is entitled to relief." *Id.* at 795. While a litigant need not definitively "'establish that a right of his has been infringed,' he 'must have a colorable *claim* to such a right' to satisfy Article III." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (emphasis in original). Decker has a colorable claim that she suffered an injury in fact—the defendant's calls made her feel anxious and angry (demonstrated by her exclamation in one call)—and I conclude that she has standing to bring her FDPCA claims.

## C. Fair Debt Collection Practices Act

### 1. *Section 1692d*

Section 1692d of the Fair Debt Collection Practices Act prohibits debt collectors from engaging in any conduct, the "natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d includes a non-exhaustive list of conduct that constitutes such harassment, oppression or abuse:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

10

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

Receivables says that the natural consequences of its actions were not harassment, abuse or oppression, and that there are at least three ways one can tell: first, the frequency and pattern of the calls were reasonable, [35] at 16–18, and do not indicate an intent to harass, [40] at 8; second, Decker never asked that they stop calling, [40] at 9–10; and third, Receivables never threatened garnishment or used offensive or misleading language. [35] at 18; [40] at 9–10.

Some courts granted summary judgment to debt collectors, notwithstanding frequent calls. *See, e.g., Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F.Supp.2d 694, 707 (D. Minn. 2012); *Karp v. Fin. Recovery Srvcs, Inc.*, No. A-12-CA-985 LY, 2013 WL 6734110, at *7 (W.D. Tex. Dec. 18, 2013), *report and recommendation approved sub nom. Karp v. Fin. Recovery Servs., Inc.*, No. A-12-CV-0985-LY, 2014 WL 12638504 (W.D. Tex. Jan. 7, 2014); *Carman v. CBE Grp., Inc.*, 782 F.Supp.2d 1223, 1232 (D. Kan. 2011);*Tucker v. CBE Grp., Inc.*, 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010). But

11

here, drawing inferences in Decker's favor, a jury could conclude that Decker told Receivables to stop calling her, [38] ¶ 49,[2] yet it kept calling and at times it called twice in one hour and on weekends. [41] ¶ 9; [38-2]. A reasonable jury could conclude that the "natural consequence" of calling someone an average of two times a day for five months straight—often twice within the same hour, on the weekends, and despite (according to Decker) repeated requests to stop—would be to "harass, oppress, or abuse" the person on the other end. 15 U.S.C. § 1692d.[3] Even when connections are rare, repeated calls eventually become less indicative of a "difficulty … reaching" the plaintiff, *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009), and more a message unto themselves: we will bother you until you pay your debt. Decker has produced enough circumstantial evidence to raise the question.

---

[2] Receivables played audio recordings of six calls that Decker had with Receivables during her deposition, *see* [38] ¶¶ 43–48, and after hearing each, Decker admitted she never heard herself request that Receivables stop contacting her. *Id.* But Decker also asserts that she told Receivables to stop calling her on at least six other occasions. [38] ¶ 49. The resolution of this disagreement depends on witness credibility, and I must take the facts in the light most favorable to Decker (the non-moving party) and draw all reasonable inferences in her favor. *P.H. Glatfelter Co.*, 768 F.3d at 668. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (testimony cannot be disregarded "merely because it was uncorroborated").

[3] A debt collector can violate this provision even if it did not have the intent to annoy the debtor. Section 1692d prohibits debt collectors from engaging in any conduct "the natural consequence of which is to harass, oppress, or abuse." 15 U.S.C. § 1692d. It then provides that—"[w]ithout limiting" that requirement—one can show it has been violated by demonstrating that a debt collector has "[c]aus[ed] a telephone to ring … repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5); [35] at 16. The latter is a sufficient-but-not-necessary subset of the former. *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2003) (under 1692d(2), "intent is irrelevant," and what is "determinative is whether 'the natural consequence of' [defendant]'s obscenity-laced message was to 'abuse the hearer'").

Receivables says that it made no "oppressive, abusive, false, deceptive or misleading statements" during any of its calls with Decker. [35] at 18. Decker says that the calls "were abusive, harassing and annoying," [41] ¶ 13, and says Receivables used fraud, deception and misrepresentation in its attempts to collect the debt, [35-2] at 29, and that dispute can be resolved by a jury. The "natural consequence" of a call can be to "harass, oppress, or abuse," even if there were no explicitly oppressive, abusive, false, deceptive or misleading statements made during those call. *See* 15 U.S.C. § 1692d.

Damages are not a problem for Decker, either. She has testified that she felt abused, annoyed and harassed. [38-1] 148:1–11. She has explained that the calls caused her to "go into panic mode," [38-1] 116:17–19, and that they were particularly stressful because each call could have brought with it bad news about her ailing grandmother. [38-1] 112:21–113:2. The stress eventually manifested on a call with Receivables, during she yelled, "fucking talk if you're gonna call me 20 times a day." [41] ¶ 6. In her responses to defendant's interrogatories (which were attached to an affidavit submitted by Receivables), she added that her "hypertension and anxiety were severely exacerbated," that the calls caused her "mental anguish" and "anxiety," and that she was "inconvenienced" by the calls themselves. [35-2] at 24. She has explained the circumstances of her emotional damages in "reasonable detail" and without relying on merely "conclusory statements." *Denius*, 330 F.3d at 929 (7th Cir. 2003). This is more than the plaintiff in *Wantz*, whose only evidence was conclusory testimony that he was "humiliated," "embarrassed," and "mentally and emotionally

13

distressed." *Wantz*, 386 F.3d at 834. Decker was more specific and she can point to a concrete example of her expressing agitation directly to Receivables. Even though these types of harm are "easy to manufacture," *Sarver*, 390 F.3d at 971, if they are properly supported like Decker's, they can go to a jury. Receivables motion is denied insofar as it addresses that portion of Decker's complaint that alleges a violation of 15 U.S.C. § 1692d.

> 2.      *Section 1692g*

Section 1692g requires that, either in the initial communication with the consumer or within five days of that communication, the debt collector "send the consumer a written notice containing" certain information, including the amount of the debt, the name of the creditor to whom the debt is owed, and other information related the consumer's right to request that the debt be verified. 15 U.S.C. § 1692g.

After being played an audio recording of a call from December 16, 2016, Decker testified that she told Receivables that her address was "6 Circle Drive, No. 6." [38-1] 124:14–16. *See also* [38-1] 140:17–141:7 (Decker confirmed that, on March 29, 2017, she again told Receivables that her address was "6 Circle Drive, No. 6"). Receivables says that, in reliance, it sent the notice required by § 1692g to "6 Circle Dr. #6, Effingham, Illinois" the next day. *See* [38] ¶¶ 11–12; 14; 23; [35] at 19–20; [40] at 7; [35-3] at 19. The record contains a copy of a letter, addressed to "Decker, Amanda" of "6 Circle Dr #6, Effingham, IL," dated December 17, 2016, that includes the rest of the information required by § 1692g. [35-3] at 22.

Decker testified that, regardless of what she told Receivables, there is no apartment number in her address, [38-1] 17:18–22, and that she has "no idea" why

14

Receivables added an unnecessary "#6" when sending the notice required by § 1692g. [38-1] 44:11–14. And, she says she never received that notice (or any of the other notices Receivables says they sent). *See* [38-1] 102:23–103:1. She points to an unpublished Eleventh Circuit case (*Ponce v. BCA Fin. Servs., Inc.*) for the proposition that the "plain language" of the statute requires that the debt collector send notice to a "valid and proper address where the consumer may actually receive it." 467 Fed. App'x 806, 807–08 (11th Cir. 2012).

Decker's argument falls short of establishing a genuine issue of material fact. Even taken in the light most favorable to her, it establishes that she never received the information—not that Receivables failed to send it. 15 U.S.C. § 1692g ("a debt collector shall … send the consumer a written notice"). The statute does not require receipt; Decker must show that the notice was not sent. *Antoine v. J.P. Morgan Chase Bank,* 757 F.Supp.2d 19, 22 (D.D.C. 2010) (Plaintiff's allegation that he did not receive the notice was insufficient because "[s]ection 1692g does not require that this information be *received* by the debtor … it explicitly states that a notice must be sent") (emphasis in original); *Martin,* 192 F.Supp.3d at 1307–08 (same); *Mahon v. Credit Bureau of Placer Cty. Inc.,* 171 F.3d 1197, 1201 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 1999) ("section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor"); *Celotex,* 477 U.S. at 323. There is no dispute that Receivables sent the required information to an address that Decker provided; to the degree there is a dispute, it is whether "#6" should have been in the address.

15

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," because there must be some "*genuine* issue of *material* fact." *Anderson,* 477 U.S. at 248 (emphasis in original). Whether "#6" should be in the address is not material—it was an address given by Decker (one that largely conformed to her accurate address) and Receivables sent a letter with the required information. Receivables is entitled to judgment as a matter of law on Count II of Decker's complaint, insofar as Count II is premised upon a violation of 15 U.S.C. § 1692g.

## IV.     Conclusion

Defendant's motion for summary judgment, [35], is granted in part, denied in part. Counts I and III of Decker's complaint are dismissed with prejudice, and Receivables is entitled to judgment as a matter of law on Count II insofar as it is premised upon a violation of 15 U.S.C. § 1692g. Defendant's motion is denied insofar as it addresses that portion of Decker's complaint that alleges a violation of 15 U.S.C. § 1692d.

ENTER:

_____

Manish S. Shah
United States District Judge

Date: March 11, 2019